UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

UNITED STATES OF AMERICA                         12 Cr. 121 (RJS)

        -against-

DANNY KUO,

        Defendant

------------------------------------------------------------- X

## SENTENCING MEMORANDUM OF DANNY KUO

 

SERCARZ & RIOPELLE, LLP
810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: 212-586-4900

*Attorneys for Defendant Danny Kuo*

**PRELIMINARY STATEMENT**

Defendant Danny Kuo ("Mr. Kuo" or "Kuo") respectfully submits this memorandum in aid of his sentencing. Although the Presentence Report ("PSR") includes a description of Mr. Kuo's background and the offense, we submit this memorandum to provide additional detail regarding these matters, so that the Court will have a fully nuanced picture of Mr. Kuo and his conduct when it imposes its sentence on him. For all the reasons stated herein, we respectfully submit that a sentence of probation is appropriate in this case.

**MATERIAL REDACTED**

But there are many other reasons why the Court should sentence Mr. Kuo to probation, **MATERIAL REDACTED**. The record demonstrates that Mr. Kuo's conduct in this case was an aberration in an otherwise exemplary life. He was never in trouble with the law before getting involved in the criminal conduct described in the PSR. And Mr. Kuo has lived an entirely law abiding and admirable life in the two and a half years since **MATERIAL REDACTED**.

As is indicated more fully below, Mr. Kuo has struggled to rebuild his life after enduring the public humiliation associated with this case. Although he has lost his job and has resigned from the program he began to become a Certified Financial Analyst ("CFA"), Mr. Kuo has continued his academic studies in order to improve his employment prospects. He recently earned his MBA while working full time to support his family. Mr. Kuo has devoted himself to finding a way to maintain his family's modest lifestyle, in spite of the difficulties he faces as a convicted felon in a high profile matter. He has done all that he can to correct his errors.

At this point, Mr. Kuo has been punished enough. A sentence of incarceration would be unjust, because it would cause his family to suffer unnecessarily. Mr. Kuo should be spared the further humiliation that would result from seeing his family hurt. He should simply be permitted

to continue his efforts to support his family and friends, all of which are described in detail in the letters submitted to the Court in support of Mr. Kuo. We urge the Court to consider these letters and permit Mr. Kuo and his family, who still have "all [the world] before them," to get on with their lives, with "wandering steps and slow," and with the painful experience of this case as their guide.

## STATEMENT OF FACTS

**A.     Mr. Kuo's Personal History and the Nature of His Conduct**

    **1.     Mr. Kuo's Personal History and Characteristics**

As is noted in the PSR, Mr. Kuo is an immigrant to this country who lost his father while he was attending college. PSR, ¶ 58. While he had a good childhood and a supportive family who helped him to recover from the loss of his father, many of the letters written to the Court by Mr. Kuo's family and friends describe how difficult the loss was for Mr. Kuo, and how well he responded to it.

For example, Mr. Kuo's sister, Clare Crawford describes how

> … the loss of a parent was difficult for us, especially at such a young age. Dad was the oldest son in his family, which was a very important position in Taiwanese culture. He was in charge of family affairs and responsible for taking care of his parents. Danny, being the only son of the first son, inherited many of these responsibilities … [and] stepped into the role of oldest son.
>
> … He matured during this time and learned to set aside his own desires for the sake of others.
>
> After my father's passing, Danny took on a parental and protective role in my life. … I appreciated his care and concern for me.

Letter of Clare Crawford, attached as Exhibit A. These sentiments are echoed by Mr. Kuo's mother, who writes that after the "big shock to our family" caused by the loss of Danny's father,

2

"Danny became responsible for caring for his sister and me. … He took charge of the family at twenty years of age." Exhibit B.  And Mr. Kuo's cousin, Wayne Hsu, writes that the death of Mr. Kuo's father "didn't stop him to become a better person.  He took his responsibility to study even harder and later became very successful in his job." Letter of Wayne Hsu, attached as Exhibit C.

In Mr. Kuo's case, the loss of his father appears to have impelled Mr. Kuo to become a sort of "elder" and "advisor" to both his family and friends.  For example, his sister describes how he helped her with her tuition payments for Law School (Exhibit B), and many of his friends have described how Mr. Kuo helped them with their own family difficulties or issues, with school problems, or business issues.  See, e.g., Letter of Hamid Zaidi, attached as Exhibit D ("When I got married in April 2009 Danny was so generous with his time in helping me understand the joys and challenges of marriage and ultimately raising a family"); Letter of Jennyeu Wang, attached as Exhibit E ("Danny stayed up all night" to assist with an academic issue); Letter of Jina Park, attached as Exhibit F (describing how "Danny would willingly offer and follow through with tutoring me in difficult subjects such as Accounting and Finance … [he] would often take on the more tedious or demanding portions of our group projects and would be detailed enough to go over the entire presentation to make sure we presented our best work.  He would respond at all hours, even very late at night."); and Letter of Greg Harrison, attached as Exhibit G ("He would routinely go above and beyond for any friend or client who needed him").

Throughout his life, Mr. Kuo has been committed to his community and has done a great deal to assist others through his activities with charitable organizations, and through personal charity.  For example, several of Mr. Kuo's friends recall his work with the U.C. Berkeley Chinese Student Union.  According to Tina Chen, "I often saw him take aside a freshman-in-

3

distress to coach and encourage the individual.  His down-to-earth demeanor and humorous comments got us through many dreary meetings.  I, along with others, looked up to Danny as opposed to the President of the group, for Danny was an inspirational leader." Letter of Tina Chen, attached as Exhibit H.  As Canaan Chen notes, "Danny was a great friend to many of us because he was willing to help those in need.  He brought people together not for his own gains and didn't mind sacrificing his own time and money to support his friends." Letter of Canaan Chen, attached as Exhibit I.

One particularly heartwarming description of Mr. Kuo's commitment to community service is included in the letter of Anthony Lin attached as Exhibit J.  According to Mr. Lin, he met Mr. Kuo

> … while volunteering at the Alzheimer's Services of the East Bay.  … Danny always lightened up an otherwise disheartening place where people typically did not remember us from week to week.  He always filled the room with his quick wit.  He also treated the patients with respect and dignity, as if they were his grandparents.  In one occasion, he spent hours with a dementia patient, tending to her non-medical needs.  Afterwards, when I asked him why he spent so much time with this particular patient, he answered, all she wanted was to talk to her deceased grandson again and I reminded her of him.  I would do the same for any other patient so they can have one happy memory today.  Even in his teens, Danny showed maturity and compassion beyond those of his peers.

Mr. Kuo's personal charity to others is a frequent subject of the letters written by his friends.  Shen Chen describes how Mr. Kuo became a "friend and mentor" to him, and helped him through a difficult experience as an intern.  According to Mr. Chen, "Danny has played a key role with the success of my career. … Throughout our friendship, whenever I am struggling, Danny always puts the problem in perspective for me and helps coach me through tough times."

4

Letter of Shen Chen, attached as Exhibit K. Mr. Kuo's friend Willis Lee expresses similar sentiments, observing that

> Graduate school for me was an opportunity to open doors but little did I know the challenges I would face with the academic demands and financial burden. Fortunately for me, I met Danny during the first few weeks of class. As a friend, Danny was always there to help me with challenging subjects at school and advise me on difficult issues in my life. Over the next four years, we would share dinners with classmates, study together, and talk about life and family.

Letter of Willis Lee, attached as Exhibit L. And Ted Chen describes how Mr. Kuo helped him grow his business by helping with "corporate planning … finance … [and a] permit application" free of charge. According to Mr. Chen,

> Danny spent endless hours of his free time away from school and family working with our CPA and the program administer, and reviewing and organizing our corporate documents to meet the application requirement. Danny even offered me suggestions on how to improve the company's general procedures and financial control. In our application interview with the City of Los Angeles Bureau of Contract Administration, the program administrator commented on the professionalism that Danny displayed throughout the application process. … My wife and I are so grateful to have a friend like Danny who is so kind and generous with his time.

Letter of Ted Chen, attached as Exhibit M. Other letters written by friends of Mr. Kuo, attesting to his fundamental decency and willingness to support them at a time of trouble, or to help repair relations between them and their circle of friends, are attached together as Exhibit N.

Mr. Kuo is also a person who is capable of genuine remorse and correcting his mistakes. His friend of 25 years, Yenyao Hsieh, describes an incident in her letter where Mr. Kuo immediately responded to his own wrongdoing by making amends. According to Ms. Hsieh:

5

> I remember one instance when he [Mr. Kuo] and mutual friend of ours had made some had made some hurtful and inappropriate comments about me in front of some other friends. When I confronted him [Mr. Kuo] about it, he immediately admitted that he was wrong, and wrote an apology in an e-mail to me and copied all of our friends who were present at the incident. I was touched that he wrote such a poignant letter expressing his sorrow and included all of our friends in the e-mail who were present. It showed me that he was humble enough to admit his mistakes, and loyal enough to fix our friendship. Needless to say, he has never uttered another negative word about me again.

Letter of Yenyao Hsieh, attached as Exhibit O. Clearly then, Mr. Kuo is a person who can feel genuine remorse and rectify his mistakes. We respectfully submit that his response to this case **MATERIAL REDACTED** is a genuine response to his own wrongdoing, and signifies his desire to correct his transgressions.

    2.    <u>**The Nature of Mr. Kuo's Conduct**</u>

There is no question that Mr. Kuo's conduct as a participant in an insider trading ring was serious. The members of the conspiracy charged in the indictment routinely traded tips with each other in violation of the law. They did so to get an "edge" over the competition, to impress their superiors, and to earn higher salaries and bonuses. All this was deplorable and wrong.

But the conduct involved in this case did not result in physical harm to anyone. It did not bankrupt or destroy anyone financially, as a Ponzi scheme might. The conduct did not prey upon the unfortunate, create drug addicts or destroy poor neighborhoods as narcotics trafficking does.

None of this is an excuse for Mr. Kuo's wrongdoing. But we respectfully submit that the Court should consider these facts about Mr. Kuo's conduct when it decides what sentence to impose on him. Given the nature of Mr. Kuo's crime, **MATERIAL REDACTED**, we respectfully submit that the Court should exercise its judgment in favor of significant leniency in

this case. We would certainly understand why the Court might be less inclined to show leniency to Mr. Kuo if he had done some physical harm to his victims, or ruined them financially, or preyed upon the poor and misfortunate. But none of that is true in this case, and therefore, the "quality of mercy" in this case should not be "strained" and should "fall as the gentle rain from heaven."

**B.     MATERIAL REDACTED**

  **2.     Mr. Kuo's Life Since His Arrest**

  Mr. Kuo's life since his arrest has not been easy. As a result of his conviction, Mr. Kuo was sued by the Securities and Exchange Commission ("SEC") and resigned from the program he had begun to obtain his license as a Certified Financial Analyst ("CFA"). A copy of a letter from the CFA Institute, acknowledging Mr. Kuo's resignation from the CFA program, is attached as Exhibit P. And, although Mr. Kuo has not finalized the settlement of the SEC's lawsuit against him, it is a certainty that such a settlement will require a bar from further association with a broker/dealer or an investment advisor. Therefore, the likelihood that Mr. Kuo will ever be employed in the securities industry again is virtually nil. He will have to find another line of work, after devoting nearly his entire adult life to working as a financial analyst in the securities industry. See PSR, ¶¶ 74-79.

  As the PSR notes, after pleading guilty, Mr. Kuo found work at Nexsun Corporation, working very long hours to support his family. PSR, ¶ 73. Unfortunately, that firm folded as a result of an unfavorable market and law enforcement inquiries directed at the owner of the firm. So Mr. Kuo is now again unemployed and continuing a difficult job search.

  In addition to struggling to find work during the past two years, Mr. Kuo has completed his MBA at USC. During his time at USC, Mr. Kuo was open with the school and his classmates

about his circumstances. In her letter to the Court, Jeanette Christensen, the MBA.PM Program Director at USC writes that

> Danny has spent a number of hours with me and other program administrators/faculty talking about his poor choices and the impact to Whittier Trust Co, his family, our school and society. ... He carries guilt on his face, in his body language, and in his conversation.
> ...
> Whatever the sentencing outcome, one of the on-going conversations where Danny can make a difference to current/future MBA students is to tell his Whittier Trust story including the painful personal consequences so they avoid making a similar mistake. ... Danny has willingly offered to be involved with us in this manner in the days ahead.

Letter of Jeanette Christensen, attached as Exhibit Q. Mr. Kuo's classmate, Annie Chen, writes in a similar vein, describing Danny's eagerness to participate in "community service and volunteer work" in a "very caring, patient and compassionate" manner. And Ms. Chen observes that "Danny Kuo's conviction shocked our entire business school and those who know him personally. For all of us who know and care much about Danny, we see a compassionate, caring, generous and honorable man. Danny is a man who has made positive contributions to friends, colleagues, and society." Letter of Annie Chen, attached as Exhibit R.

Mr. Kuo's decision to deal with his transgression in a direct and forthright way while attending USC is, we submit, a good indication that he is already well on the way to rehabilitating himself. He has demonstrated his willingness to address his problems openly, which is a significant step toward resolving them.

Of course, at this point, Mr. Kuo's principal concern is finding a way to care for his wife and daughter. Over and over again, those who have written the Court remark on his devotion to his family. For example, Mr. Kuo's friend John Shaw writes

8

> When I think of Danny, I think of a person that has taken great care of his family. As the sole financial supporter for the family, Danny often worked long hours and was very dedicated to his work. …
>
> …[He] is completely devoted to his family. He especially takes great care of his daughter Presley. Danny is one of those fathers that spend a great deal of time with his child. … Having such a close relationship with her father, I cannot imagine how much Presley's life would change without the presence of Danny.
>
> Danny also plays an important role in the life of his mother. His father passed away when they were at a young age and Danny provides financial and emotional support for his mother. They have a close relationship and he visits her often with his family. It would also be devastating to her if Danny was not around.

Letter of John Shaw, attached as Exhibit S.

The very best description of Mr. Kuo's importance to his family is included in the letter written by his wife, Mimi. As Mimi tells it,

> In the traditional Taiwanese culture, the husband is head of the household and the guiding star of the family. Danny has lived up to this. He is in charge of our family's finances and makes the major decisions while I focus on taking care of the family's well-being and child-raising. I truly respect Danny for being a supportive husband. I remembered that I was always embarrassed to speak to others due to my poor English skills. However, Danny never embarrasses me in front of others and only encourages me to speak to as many people as I can so I can practice English on a regular basis. He sees beyond my faults and appreciates the positive characters that many would not necessarily appreciate. Danny never compares me to other people.… Danny has truly been my pillar of strength.
>
> Therefore, when his arrest happened, my whole world turned pitch dark. … I have not sleep well since his arrest and continues to have nightmares every night. But Danny was always there to support me emotionally …. Danny often comes home from work past midnight, then eats his

9

> dinner and continues to work from home until three or four o'clock in the morning. Despite these long working hours, he still managed to continue his MBA education at USC. There were many times when Danny had to work on his paper overnight and head straight to class on Saturday mornings. But he never complained, not a single time, and persevered through all of this even after knowing that the company he worked for was about to lay him off and close down. This shows Danny's true personal characters – mentally strong, dedicated and responsible….
>
> …With Danny still actively looking for job, he spends his extra time with our daughter by teaching her grammar, reading to her, and helping her with her homework. On the weekends, Danny spends the entire day with our daughter, taking her to the parks and introducing her to sports. … I really do not want my daughter to forget the image of her father and will do anything I can to protect her. The biggest fear for me is to lose the smile on her face.
>
> This summer, my brother will move back to Taiwan permanently due to my father's failing health. My brother will be staying in Taiwan to take care of my father. Other than my brother, Danny is my only support system I have in the U.S. I would not know what to do if I am here alone with Presley…. Our family needs him. I hope the court may consider the positive contributions Danny has made to my personal life, to those around him, and most of all, the role that he can play in our daughter's personal development ….

Letter of Mimi Kuo, attached as Exhibit T.

During the past two years, Mr. Kuo has lived in a kind of limbo, terrified of the possible outcomes in this case. He has led a blameless life during that time, as he has struggled to support his family and raise his daughter, while continuing his education and searching for work. His concern has always been to find a way to support his family, while doing what he can to rectify the damage done by his conduct in this case. He and his family worry constantly about what might happen if he is incarcerated, because a term of incarceration would deal Mr. Kuo's family a devastating financial and emotional blow.

10

We respectfully submit that Mr. Kuo has already paid a very high price for his wrongdoing, and his crimes are not a reflection of his true character. His criminal activity is entirely behind him and there is absolutely no evidence that he will re-offend, given his exemplary behavior during the past two years, when he has done a great deal to begin the process of rehabilitating himself and finding his way forward. The Court should not derail Mr. Kuo's hard fought attempt to atone for his mistakes, which are really a single blemish in an otherwise admirable life. A sentence of probation is clearly appropriate in this case.

## ARGUMENT

### THE COURT SHOULD IMPOSE A NON-GUIDELINES SENTENCE OF PROBATION

We do not quarrel with the Probation Department's calculation of Mr. Kuo's sentencing guidelines. Both the government and Mr. Kuo's counsel agree that Mr. Kuo's sentencing guidelines sentencing range is 30-37 months prior to departure. However, we contend that it is appropriate to impose a sentence of probation in this case **MATERIAL REDACTED**, and because a review of the factors the Court must consider pursuant to Title 18 U.S.C. § 3553 weighs in favor of a probationary disposition. We respectfully contend that to sentence Mr. Kuo to a term of incarceration at this point would result in an injustice.

### A.      A Review of the Section 3553 Factors Weighs in Favor of a Sentence of Probation

Title 18 U.S.C. § 3553 provides that the Court should impose "a sentence sufficient but not greater than necessary" to provide just punishment for the defendant, and requires the Court to consider "the nature and circumstances of the offense and history and characteristics of the defendant." Pursuant to 18 U.S.C. § 3553, the Court must also consider the need for the sentence it imposes "to reflect the seriousness of the offense, [and] to promote respect for the law." 18 U.S.C. § 3553(a)(1) and (2)(A). These sections of the Code direct the Court to consider the defendant and his actions holistically, and to "provide just punishment for the offense" in light of all the facts known to the Court.

While Mr. Kuo's offense is serious, there is no question that a sentence of probation will promote respect for the law and provide just punishment, particularly in the circumstances presented by this case. See Gall v. United States, 128 S. Ct. 586, 595-96 (2007) (a probationary sentence imposes a significant restraint on the liberty of a defendant). **MATERIAL REDACTED**. A sentence of probation will have that effect.

Moreover, Mr. Kuo's importance to his family unit, which will surely struggle to survive without him, is also a factor the Court should take into account when it considers "the ... history and characteristics of the defendant." In the days when the sentencing guidelines were binding on the Court, factors such as Mr. Kuo's importance to his other family members would justify a departure from the applicable sentencing guidelines sentencing range. See, e.g., United States v. Londono, 76 F.3d 33, 36 (2d Cir. 1996) ("this Court and other courts of appeals have recognized that a defendant's familial responsibilities may present such 'extraordinary circumstances' that a downward departure in sentencing is necessary and permissible"); United States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992) (same). Now that the sentencing guidelines are only advisory, the

12

reasoning of these cases supports a non-guidelines sentence below the applicable sentencing range, and Mr. Kuo submits that he should receive a non-guidelines sentence of probation based on his family circumstances. See United States v. Galante, 111 F.3d 1029, 1035 (2d Cir. 1997) (upholding sentencing court's decision to depart downward based upon the Judge's determination that "removal of the father from this unit at this particular point in time would have a disastrous effect on the children in terms of possibilities of their education and upbringing"); United States v. Alba, 933 F.2d 1117, 1122 (2d Cir. 1991) (upholding downward departure where defendant's incarceration in accordance with the Guidelines "might well result in the destruction of an otherwise strong family unit").

The second factor listed in 18 U.S.C. § 3553(a)(2) is to "afford adequate deterrence from criminal conduct." 18 U.S.C. § 3553(a)(2)(B). This factor focuses on general deterrence of the public from committing criminal conduct of the type the defendant has engaged in.

With respect to general deterrence, Mr. Kuo submits that a term of probation, when considered together with the substantial collateral damage done to him by the prosecution of this case (the loss of significant income and the loss of his profession), will provide adequate general deterrence to the criminal conduct of others similarly situated to him. The public humiliation of a felony conviction and the supervision of a probation officer are a significant punishment. The substantial loss of income Mr. Kuo has suffered to date and will likely continue to suffer for the rest of his life is another very serious punishment that will discourage others from doing as he did. And the barrier to re-employment that results from his felony conviction and inevitable bar from further activity in the securities industry is another heavy burden for Mr. Kuo that would tend to discourage others from committing the same crimes Mr. Kuo committed.

In addition, as is noted in the Letter of Jeanette Christensen attached as Exhibit Q, Mr. Kuo has agreed to "tell his Whittier Trust story" to students at USC's business school, "including the painful personal consequences so they avoid making a similar mistake." Mr. Kuo's commitment to telling his story directly to his peers will be a strong general deterrent to misconduct, and will deter wrongdoing by others far more effectively than a term of incarceration would.

We respectfully submit that no member of the public could regard the combination of penalties and disabilities that Mr. Kuo will suffer a "light sentence" for a crime that was non-violent, and did not harm any individual directly. In these circumstances, we respectfully submit that the imposition of a lengthy sentence of incarceration on Mr. Kuo won't add any further momentum to the general deterrence that this case already provides through the penalties Mr. Kuo has already suffered and the significant burdens he will be required to carry for the rest of his life as a result of his crime.

The third factor listed in 18 U.S.C. § 3553(a)(2)(C) focuses on specific deterrence of further criminal conduct by the defendant himself. It requires to the Court to consider the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). If the Court imposes a term of probation on Mr. Kuo, such a sentence will certainly provide good *specific* deterrence to prevent Mr. Kuo from committing any further crimes, as he will be closely monitored by a Probation Officer, who will ensure that Mr. Kuo will not drift into further crime. In addition, as noted above, Mr. Kuo has already resigned from the program he began to obtain his license as a CFA, and he will be barred from further activity in the securities industry. These actions will also deter Mr. Kuo from committing similar crimes in the future.

14

Moreover, given Mr. Kuo's exemplary conduct during the past two years, and the fact that Mr. Kuo was never involved in any criminality until his conduct in this case, there is little reason to believe that Mr. Kuo will re-offend at this point. The very slight chance of recidivism in this case also suggests that there is no need to impose a prison sentence on Mr. Kuo to satisfy the requirements of Title 18 United States Code, Section 3553(a)(2)(C).

18 U.S.C § 3553(a)(2)(D) speaks of the need for a sentence to "provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." The defendant respectfully submits that no incarceration is needed in order to ensure his rehabilitation. His conduct during the past two years demonstrates that he has already begun the process of rehabilitation. He has, through hard work and dedication to his family, continued to make a life for himself and his family, while completing his MBA at USC. Incarcerating Mr. Kuo won't do a thing to assist him in his reform, and it will only damage his family and ensure that their lives are made more difficult and perhaps entirely miserable. There is no reason to impose a sentence that will inevitably result in the impoverishment of Mr. Kuo's family, and alienate them from the public. Thus, an analysis of this factor also suggests that a sentence of incarceration is unnecessary.

Title 18 U.S.C. § 3553(a)(6) describes "the need to avoid *unwarranted sentence disparities* among defendants with similar records who have been found guilty of similar conduct." (Emphasis added). **MATERIAL REDACTED.** A sentence of probation in this case is therefore appropriate. The imposition of a probationary sentence on Mr. Kuo will be consistent with the punishments imposed on other, similar defendants. Indeed, we respectfully submit that a sentence of incarceration in this case would result in an "unwarranted sentence

disparity" with respect to Mr. Kuo, and therefore, consideration of this factor also suggests that a sentence of probation is appropriate in Mr. Kuo's case.

Finally, 18 U.S.C. § 3553(a)(7) requires the Court to consider "the need to provide restitution to any victims of the offense." Because Mr. Kuo's activity constituted a "fraud on the market" without specifically identified victims, restitution is not applicable. Therefore, this factor also weighs in favor of a probationary sentence.

As is indicated by the foregoing analysis, the various relevant factors set forth in Title 18 United States Code Section 3553(a) all weigh in favor of a sentence of probation, and Mr. Kuo respectfully requests that the Court to impose such a term on him.

## CONCLUSION

For all the foregoing reasons, Danny Kuo respectfully requests that the Court impose a probationary sentence on him.

Dated: New York, New York
      June 13, 2014

SERCARZ & RIOPELLE, LLP

By: _/s/ Roland G. Riopelle_
Roland G. Riopelle, Esq. (RR-2950)
810 Seventh Avenue, Suite 620
New York, NY 10019
(212) 586-4900
Fax (212) 586-1234

*Attorneys for Defendant Danny Kuo*
